# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **JEFFREY ALLEN COLLIER**, <br><br> Defendant. | Case No. 3:16-cr-348-SI <br> 3:18-cr-350-SI <br><br> **OPINION AND ORDER** |

**Michael H. Simon, District Judge.**

In Case No. 3:16-cr-348-SI, the Court sentenced Defendant to ninety-six (96) months imprisonment for distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1). In Case No. 3:18-350-SI, the Court sentenced Defendant to ninety-six (96) months imprisonment for transportation of child pornography in violation of 18 U.S.C. § 2252A(a)(1) and (b)(1), to be served concurrently with the sentence in Case No. 3:16-cr-348-SI, plus an additional penalty of thirty-one (31) months imprisonment in Case No. 3:18-cr-350-SI, to be served consecutively to the sentences imposed in Case No. 3:16-cr-348-SI and Case No. 3:18-cr-350-SI. In addition, Defendant agreed in his plea agreement "to pay restitution for all losses proximately caused by defendant's conduct, regardless of whether counts of the indictment or information dealing with such losses will be dismissed as part of this plea agreement." The

government now seeks mandatory restitution under 18 U.S.C. § 2259 for "Andy," "Jenny," "Jane," "Erika & Tori," "Fiona," "Henley," "Pia," and "Emily," the identified victims who have requested restitution. A restitution hearing was held on November 21, 2019.

## STANDARDS

Restitution is mandatory in child pornography cases for "the full amount of the victim's losses as determined by the court," and shall be imposed "in addition to any other civil or criminal penalty authorized by law" regardless of the defendant's economic circumstances. 18 U.S.C. §§ 2259(a), (b)(1), (b)(4) (2017).[1] Recoverable losses include medical services relating to physical, psychiatric, or psychological care; physical and occupational therapy or rehabilitation; necessary transportation, temporary housing, and child care expenses; lost income; attorney's fees and costs; and "any other losses suffered by the victim as a proximate result of the offense." 18 U.S.C. § 2259(b)(3). The term "victim" includes both "the individual harmed as a result of a commission of a [child pornography] crime," and, if the victim is under 18, "the legal guardian of the victim" or "another family member." 18 U.S.C. § 2559(c). The Ninth Circuit has described § 2259 as a statute "phrased in generous terms, in order to compensate victims of sexual abuse for the care required to address the long-term effects of their abuse." *United States v. Laney*, 189 F.3d 954, 966 (9th Cir. 1999).

The government bears the burden of proving losses for restitution by a preponderance of the evidence. *United States v. Waknine*, 543 F.3d 546, 556 (9th Cir. 2008). Mathematical

---

[1] Effective December 7, 2018, the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 amended § 2259 in several respects. As amended, § 2259(b)(2)(B) requires courts to order restitution "in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000." *See* Pub. L. No. 115-299, 132 Stat. 4383 (2018). That provision does not apply retroactively to criminal conduct that pre-dates the Act's effective date. Accordingly, it does not apply in either of the pending cases.

precision is not required, and the assessment necessarily "involves the use of discretion and sound judgment." *Paroline v. United States*, 134 S. Ct. 1710, 1727 (2014). Nonetheless, the defendant's criminal conduct must be the proximate cause of the victim's losses. *Paroline*, 134 S. Ct. at 1722. Moreover, a restitution award must be "adequately supported by evidence in the record," and the court must set forth its reasons when resolving disputes regarding the amount of restitution. *United States v. Tsosie*, 639 F.3d 1213, 1222 (9th Cir. 2011). Courts must "do their best to apply the statute as written in a workable manner, faithful to the competing principles at stake: that victims should be compensated and that defendants should be held to account for the impact of their conduct on those victims," but also that defendants are liable "for the consequences and gravity of their own conduct, not the conduct of others." *Paroline*, 134 S. Ct. at 1729.

The Supreme Court recognized that a child pornography victim "suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse she endured." *Id*. at 1726. The unlawful conduct of everyone who "produces, distributes, or possesses the images of the victim's abuse"—including defendant—"plays a part in sustaining and aggravating this tragedy." *Id*. The Court had "no doubt" that "Congress wanted victims to receive restitution for harms like this," because "every viewing of child pornography is a repetition of the victim's abuse." *Id*. at 1726-27.

The Ninth Circuit has held that district courts must disaggregate losses caused by the victim's original abuse from losses caused by the "ongoing distribution and possession of images of that original abuse, to the extent possible." *United States v. Galan*, 804 F.3d 1287, 1291 (9th Cir. 2015). The court, however, expressed no opinion about "what portion of a victim's ongoing

loss should be attributed to an original abuser." *Id*. The court harbored "no illusion that the task will be easy," but noted that "precision is neither expected nor required." *Id*.

## DISCUSSION

As of the date of the restitution hearing, the government received restitution requests from 12 victims, but only eight of whom were actually depicted in files that Defendant distributed, transported, or possessed, according to the government's evidence. Each victim submitted a detailed request outlining the harms suffered from the ongoing trade in images or videos of his or her abuse and documenting the losses each either suffered or reasonably expects to suffer as a result. The Court has reviewed these submissions and makes the following findings and rulings.

### A. Andy

Andy was sexually abused "on countless occasions" over the course of five to six years by an offender who gained access to him through a Big Brothers, Big Sisters program. The offender made "graphic video recordings" of the abuse, which have been widely circulated over the Internet. Andy's counsel contends that Andy's videos are "among the most widely distributed child pornography series in the world." Andy was evaluated by a university professor in the Department of Pediatrics and by a licensed clinical psychologist. According to that psychologist, Andy "started smoking cigarettes at age 12" and has "experimented with various drugs, including alcohol, marijuana and pain killers." Andy reported using methamphetamine "for almost a year." Andy "has become aggressive over time," has been in many fights, often triggered by "some statement or comment about homosexuality that rekindles his memories," and has had "many encounters with the law and school authorities." Andy attended about a year of individual psychotherapy in 2011.

Defendant had a single image of Andy. According to the National Center for Missing and Exploited Children (NCMEC), as of September 30, 2019, a total of 68,106 files depicting Andy have appeared in 3,914 separate Child Victim Identification Program (CVIP) Reports. Those numbers represent only cases in which the files were seized by law enforcement officers and forwarded to NCMEC for identification. There is no evidence that defendant played any role in the production of those images or videos.

Andy is asking for restitution in the amount of $25,000 for defendant's share of his future psychological counseling costs and future lost income, and $33,415 in costs and attorney fees incurred in preparing his restitution request. According to a Department of Justice database, 275 defendants have been ordered to pay a total of $1,984,479 in restitution to Andy. The highest award was $250,000, the lowest was $250, and the average award is $7,243. As of this writing, Andy has received $300,064.37 in restitution payments. The Court finds it reasonable to order restitution in the amount of $3,500 to Andy.

**B. Jenny**

Jenny was sexually abused by her mother's boyfriend when she was only seven to nine years old. The boyfriend made images and videos of the abuse, which have been widely circulated on the Internet since at least 2007. The images and videos depict sadomasochistic abuse (including bondage), bestiality, and brutal sexual assaults.

Jenny received some counseling when she was nine or ten years old. She still has "extraordinary difficulty talking about" the abuse and about "the ongoing trauma that is a result of the images and videos being downloaded and viewed." Jenny finds it "very distressing" that people are looking at the images of her abuse, and she is "very disturbed that people are downloading these images and videos." She is "frightened that they will recognize her," has "a hard time going out alone," and "cannot bear her body being shown, for example when wearing a

bathing suit or shorts." The ongoing trade in her images has "dramatically impacted Jenny's ability to trust people." A clinical social worker evaluated Jenny and wrote that Jenny "requires immediate treatment and will require intermittent treatment over her life course."

Jenny's images have been widely circulated for many years. According to NCMEC, 471,351 files depicting Jenny have appeared in 13,808 CVIP Reports. Defendant had four images and one video depicting Jenny. There is no indication that he played any role in producing any of the images or videos.

Jenny is asking for $25,600 in restitution. According to the Department of Justice database, 107 defendants have been ordered to pay a total of $324,425 in restitution to Jenny. The highest award was $25,600, the lowest was $100, and the average amount is $3,032. In a recent case in the District of Oregon, U.S. District Judge Robert Jones awarded Jenny restitution in the amount of $5,000 based on the same underlying documentation. In another case in this district, U.S. District Judge Ann Aiken awarded Jenny $4,000. In a third case in this district, U.S. District Judge Anna Brown awarded Jenny $1,250. As of this writing, Jenny has received $113,861.78 in restitution payments. The Court finds it reasonable to order restitution in the amount of $3,500 to Jenny.

## C. Jane

Beginning when she was only eight years old, Jane was "raped repeatedly and forced to endure oral copulation, anal penetration, and masturbation by her father, who captured thousands of images" of the abuse that he "shared with other individuals via the internet." The abuse and exploitation continued until Jane was 12. More than 10,000 sexual abuse images and videos of Jane were "made, distributed, shared, and downloaded online by others." Even worse, Jane's father made her aware that her abuse was being viewed by others; she recalls her father telling her that 10-15 others were "encouraging him to produce and distribute" images and videos of the

abuse online. She did not know their identities, but they knew her—what she looked like, and what her real name was.

Jane was evaluated by a clinical psychologist. Jane was 14 years old at the time of the evaluation. The psychologist described the lingering effects that Jane suffers from the ongoing circulation of her images and videos. Jane sees a lonely future without a husband or children. She changed her name, hoping to make it less likely that others would recognize her, yet she is convinced that she will run into people who have seen her images since they are "probably everywhere now." Jane feels like she is "always in the midst of someone who has seen the videos," and worries that her peers at school will find them on the Internet.

Defendant had two images of Jane. There is no indication that he played any role in their production. According to NCMEC, a total of 28,517 files depicting Jane have been seen in 1,607 separate CVIP reports.

Jane seeks $25,000 in restitution. According to the Department of Justice database, there have been 73 prior restitution awards totaling $156,514. The highest award has been $5,000, the lowest has been $300, and the average award is $2,144. In a recent case in the District of Oregon, U.S. District Judge Ann Aiken awarded Jane $6,000. As of April 11, 2019, Jane has collected $70,856.32 in restitution payments. The Court finds it reasonable to order restitution in the amount of $3,500 to Jane.

**D.  Erika and Tori**

Defendant had a single image of one of the two girls. Unfortunately, the investigative point of contact for this series was unable to identify which of the two victims was depicted in that single image. Both victims are represented by the same attorney. Despite the fact that the government cannot determine which of the victims is depicted in the single image defendant had

(although the image is of one of the two victims), counsel asked the government seek restitution, which the two victims would then split evenly between them.

According to NCMEC, 12,990 files depicting Erika have been seen in 741 separate CVIP reports. A total of 9,524 files depicting Tori have been seen in 1,428 separate CVIP reports. There is no evidence that defendant played any role in the production of any of those images.

Counsel seeks $25,000 in restitution plus costs and fees totaling $600. According to the Department of Justice database, there have been 14 restitution awards to Erika totaling $35,250. The high award was $10,000, the low award was $250, and the average award is $2,518. There have been 13 awards to Tori. The high award was $4,000, the low was $250, and the average is $2,038. As of November 8, 2019, Erika has collected approximately $17,107 in restitution payments; Tori has collected approximately $18,078. The Court finds it reasonable to order restitution in the amount of $3,000 to Erika and Tori, jointly.

### E. Fiona

Beginning when she was six years old, Fiona and her older sister Erin were "repeatedly raped and sexually assaulted by their father in order to produce child pornography." Fiona's father drugged her with prescription sleep medication so he and another man, who he was trading child pornography with, could rape her to produce child pornography to distribute online. Fiona was eight when her father was arrested. Fiona's life has been "rocked to the core" by the sexual abuse and the ongoing online exploitation of that abuse. She suffers from knowing that images of her abuse are circulating on the Internet. She struggles with "loss, depression and thoughts of suicide."

Fiona was evaluated by the same set of providers twice, once in 2015, and again in 2017. During the 2015 evaluation, Fiona remembered little about her father or what he did to her. She had built a "protective wall around herself" with regard to both the sexual abuse and her ongoing

online exploitation by "scores of other offenders who have access to the images of her." Although she was drugged at the time of the abuse, Fiona is "acutely aware of how the sexual exploitation has devastated her family." As she gets older, it is "very likely" that "her protective wall will crumble" and "the trauma of her abuse and exploitation will have additional negative impact." By the time of the 2017 evaluation, Fiona had become depressed and suicidal, and had been hospitalized. She had begun engaging in risky sexual behaviors and displayed poor boundaries when sharing the details of her sexual abuse with peers. She had been using drugs but stopped after her family moved to a new state and she made new friends.

Defendant had a single image of Fiona. According to NCMEC, a total of 10,615 files depicting Fiona have appeared in 1,537 separate CVIP reports. There is no indication that defendant played any role in the production of those images.

Fiona seeks $25,000 in restitution, plus costs, expenses, and $5,000 in attorney fees. According to the Department of Justice database, there have been 20 restitution awards for Fiona totaling $44,000. The highest awards were $5,000, the lowest was $500, and the average is $2,200. As of November 7, 2019, Fiona has received approximately $24,178 in restitution payments. The Court finds it reasonable to order restitution in the amount of $3,500 to Fiona.

## F.  Henley

Henley was sexually abused by her father for seven years, beginning when she was only five years old. Her father drugged her, told her his sexual misconduct with her was "normal," and assured her that the images and videos he produced of the abuse were just for him. He assured her that the non-pornographic images he created of her were intended to prepare her to be a model and to create a portfolio. When she said "no," he called her "worthless" and a "piece of shit." As a young adult, Henley is acutely aware that images of her abuse continue to circulate on the internet. That knowledge prevents her from getting past the original abuse. She fears that

she "may never be able to heal completely because it never ends. It is like constantly having a scab ripped off a wound that is trying to heal."

Henley struggles to keep her identity secret to avoid unwanted attention from pedophiles who have seen her images. Her "fans" have commented on the images that continue to circulate, have tried to find her, and have suggested that she "needs to do the internet a favor and grace us with her body again." She has been "approached multiple times in public" by "fans" or by people who knew her abuser, "making it crippling to go anywhere," especially alone. She feels guilt and shame, even though she recognizes that she is not responsible for what happened to her. She still feels "like a child, trapped, powerless, paralyzed, unable to stop or prevent the ongoing abuse." Henley is "scared to leave the house," has an "extreme fear of being alone" at night, has trouble trusting, communicating, and feeling valued, and "constantly" questions her self-worth. She is suspicious of others, which causes her to "constantly keep people at an arm's length."

Henley was evaluated by a clinical psychologist who works extensively with child sexual abuse victims. The psychologist diagnosed Henley as suffering from post-traumatic stress disorder with dissociative symptoms, moderate depression, generalized anxiety disorder, ADHD, and mixed personality disorder with dependent, borderline, and paranoid features. She has incurred psychological injuries "related to, and also distinct from, her original abuse" as a result of the ongoing trade in her images.

Defendant had a single image of Henley. There is no evidence that he played any role in the production of that or any other image of Henley. According to NCMEC, 164,377 images of Henley have been seen in 6,279 separate CVIP reports.

Henley seeks $5,000 in restitution from defendant, which includes costs and fees. According to the Department of Justice database, 21 defendants have been ordered to pay a total

of $82,225 to Henley. The high award was $22,000, the low was $500, and the average award is $3,915. Henley's counsel estimates she has received less than $10,000 in restitution payments to date. The Court finds it reasonable to order restitution in the amount of $2,000 to Henley.

## G. Pia

"Pia" was only three or four years old when she and two older sisters (both of whom were under 12) were sexually abused and exploited. Pia, who was a toddler when the abuse began, has no real memory of the actual abuse, and no real sense that what happened to her was wrong. Yet she is acutely aware that images of that abuse continue to circulate on the Internet.

Pia is a "pleasant, passively compliant youngster" whose demeanor is "marked by considerable anxiety and tension," and who presents as "passive, anxious, fearful, and withdrawn." She "appears to dissociate in order to avoid painful thoughts and feelings and does not invest in relationships or activities at a level commensurate with her peers." She deals with unwanted feelings and a sense of powerlessness by "withdrawing from the world and adopting an exceptionally passive stance," which is "likely to affect virtually every aspect of her life as she matures," including her ability "to be academically and vocationally productive" and her "ability to achieve satisfying emotional relationships with others." The examining psychologist writes that Pia needs to be seen by a therapist qualified in trauma-focused cognitive behavioral therapy "every week for at least two years," and will need ongoing therapy "at each critical developmental juncture."

Defendant had five images of Pia. There is no suggestion that he played any role in their production. According to NCMEC, a total of 276,195 files depicting Pia have been seen in 9,121 CVIP reports.

Pia is seeking $5,000 in restitution from defendant. According to the Department of Justice database, 200 defendants have been ordered to pay a total of $606,114 in restitution to

Pia. The highest award was $22,000, the lowest was $250, and the average is $3,031. In a recent case in the District of Oregon, U.S. District Judge Robert Jones awarded Pia $5,000. In another case in this district, U.S. District Judge Ann Aiken recently awarded Pia $3,000. Pia's counsel estimates that Pia has received more than $200,000 in restitution payments to date. The Court finds it reasonable to order restitution in the amount of $2,000 to Pia.

**H. Emily**

Emily was sexually abused by her adoptive father from age six or seven through age ten. Her abuse was both recorded and live streamed via Internet webcam transmissions, during which she was abused for others to watch, and watched other children being abused as well. For Emily, knowledge that her images are widely circulated on the Internet is particularly traumatic, as it directly relates to and triggers memories of her own abuse that was both transmitted live and captured and distributed.

Emily was evaluated by a clinical and forensic psychologist. He was tasked with trying to separate the harms Emily suffers as a result of the ongoing trade in images of her abuse from the initial trauma of being sexually abused. From outward appearances, Emily—who at the time of the evaluation was a college freshman—presents well. Yet, the fact that others continue to receive sexual gratification from online images of her abuse triggers "the reliving or recalling [of] specific aspects of her sexual victimization," and makes it "very difficult" for her to "move on" and to "distinguish between then and now." According to the psychologist, "the continual viewing and violation of Emily on the Internet recapitulates, exacerbates, compounds and prolongs her original continuing symptomatology, and impedes her psychological healing." The psychologist diagnosed Emily as suffering from Post-traumatic Stress Disorder, Generalized Anxiety Disorder, and related Unspecified Personality Disorder (Turbulent Type, Histrionic Personality Type with Compulsive and Paranoid/Hyper-vigilant traits). Emily is "currently more

anxious and symptomatic over her continuing Internet violations" than over the original sexual abuse, although the ongoing Internet violations "re-trigger and re-evoke the specific nature of her original abuse." The psychologist attributes 25 percent of Emily's current need for treatment to the original abuse, and 75 percent to the ongoing harms she suffers from knowing that images of her abuse continue to circulate on the Internet.

Defendant had a single image of Emily. There is no evidence that he played any role in its production. According to NCMEC, 8,844 files depicting Emily have been seen in 1,683 separate CVIP reports.

Emily is seeking "$15,000 or an amount the court deems fair and just" in restitution. According to the Department of Justice Database, 71 defendants have been ordered to pay a total of $230,165 in restitution to Emily. The high award was $25,000, the low was $500, and the average is $3,242. In recent cases in the District of Oregon, U.S. District Judge Anna Brown awarded Emily $1,250, and U.S. District Judge Ann Aiken awarded Emily $5,000. According to Emily's counsel, Emily has collected $95,430 in restitution. The Court finds it reasonable to order restitution in the amount of $2,500 to Emily.

## CONCLUSION

The Court orders Defendant to pay restitution in the total amount of $23,500 to the victims identified in this Opinion and Order and in the specific amounts stated in this Opinion and Order. Restitution is due and payable in full immediately.

**IT IS SO ORDERED.**

DATED this 21st day of November, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge